UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EBRAHIMI DARVOSH,   )<br>   )<br>   Plaintiff,   )<br>   )   No. 13 C 04727<br>   v.   )<br>   )   Chief Judge Rubén Castillo<br>SERGEANT LEWIS, et al.,   )<br>   )<br>   Defendants.   ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ebrahimi Darvosh, an inmate at the Cook County Jail, brings this action under 42 U.S.C. § 1983 against certain officers of the Cook County Sheriff's Office, alleging that they violated his constitutional rights during his incarceration. Plaintiff names the following defendants: Sergeant Lewis, Officer Gallancher, Lieutenant John Doe, Officer Farris, Officer Moore, Officer Johnson, Officer John Doe, Officer Star #8324, Sheriff Thomas Dart, the Sheriff's Office of Cook County, and Cook County, Illinois. Lewis and Gallancher ("Defendants" for the purposes of the present opinion) filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a), which is presently before the Court. For the reasons set forth below, their motion is granted.

## RELEVANT FACTS[1]

Prior to filing this suit, Plaintiff had filed multiple prior lawsuits against Sheriff Dart and similar defendants.[2] (Pl.'s Rule 56.1 Resp. ¶ 2; R. 1, Compl. at 3.) In each of these cases,

---

[1] The Court takes the facts from the parties' statements of facts. (R. 23, Defs.' Local Rule 56.1 Statement of Facts ("Defs.' Facts"); R. 30, Pl.'s Local Rule 56.1 Response to Defs.' Facts ("Pl.'s Rule 56.1 Resp."); R. 31, Pl.'s Local Rule 56.1 Add'l Statement of Facts ("Pl.'s Facts"); R. 33, Defs.' Local Rule 56.1 Response to Pl.'s Facts ("Defs.' Rule 56.1 Resp.").)

Plaintiff brought claims under section 1983 against Sheriff Dart, the Cook County Department of Corrections, and others, alleging that the defendants failed to protect him from attacks by fellow prisoners and denied him proper medical care for his injuries. (Defs.' Rule 56.1 Resp. ¶¶ 1, 2, 5, 6.) Case numbers 09 C 1534 and 09 C 7825 (collectively, the "Settled Cases") were the subjects of settlement agreements between Plaintiff and the Cook County State's Attorney's Office (the "Agreements").[3] (Pl.'s Rule 56.1 Resp. ¶ 5.) Plaintiff retained separate appointed counsel in each of those suits. (*Id.* ¶ 3.) Plaintiff signed the Agreements on December 27, 2012. (R. 23-2, Ex. II, 09 C 7825 Agreement; R. 23-3, Ex. III, 09 C 1534 Agreement.) Paragraph Six of the Agreements states:

> Plaintiff . . . fully and forever releases, acquits and discharge[s] defendants, and their agents, employers and former employers, either in their official or individual capacities, from any and all actions, suits, debts, sums of money, accounts and all claims and demands of whatever nature, in law or in equity that are the subject of [09 C 7825] and [09 C 1534], including but not limited to (i) any and all other claims from Plaintiff's incarceration at the Cook County Jail, up until the date of the execution of this settlement agreement; (ii) any and all claims for Constitutional violations against Plaintiff, and/or any damaged or destroyed property which are the subject of [09 C 7825] and [09 C 1534] or during the timeframe of Plaintiff's incarceration at the Cook County Jail up until the date of the execution of this settlement agreement; (iii) any costs accrued arising out of Plaintiff's interaction with Defendants, and/or any other employees of the Cook County Department of Corrections which are the subject of [09 C 7825] and [09 C 1534], or during his stay at the Cook County Jail up until the date of the execution

---

[2] Citing Plaintiff's initial complaint, (R. 1, Compl. at 3), the parties agree that Plaintiff had filed four prior lawsuits in the Northern District of Illinois. (Pl.'s Rule 56.1 Resp. ¶ 2.) This Court was only able to locate three prior suits filed by Plaintiff, however, as one of the case numbers Plaintiff provides does not correspond with a suit he filed, and a search of multiple spellings of Plaintiff's name returned only three suits: *Ebrahime v. Cook Cnty. Dep't of Corr., et al.*, No. 09 C 1534 (filed Mar. 18, 2009), (R. 29-3, Ex. C, 09 C 1534 Compl.); *Ebrahami v. Cook Cnty. Dep't of Corr., et al.*, No. 09 C 7825 (filed Dec. 21, 2009), (R. 29-4, Ex. D, 09 C 7825 Am. Compl.); and *Darvosh v. Dart, et al.*, No. 12 C 5257 (filed July 2, 2012), (R. 29-7, Ex. G, 12 C 5257 Order Dismissal).

[3] The settlement agreements are materially identical, and the Court will treat them as one for the purposes of this opinion. (R. 23-2, Ex. II, 09 C 7825 Agreement; R. 23-3, Ex. III, 09 C 1534 Agreement.)

of this settlement agreement; and/or (iv) any claim or suit which he, his heirs, assigns and legal representatives, may heretofore or hereafter have had by reason of said incidents which are the subject of [09 C 7825] and [09 C 1534] . . . or any other incident as a result of his incarceration at the Cook County Jail up until the date of the execution of this settlement agreement.

(R. 23-2, Ex. II, 09 C 7825 Agreement ¶ 6; R. 23-3, Ex. III, 09 C 1534 Agreement ¶ 6.)

The instant suit arises from an incident on May 29, 2012, when Plaintiff's cellmate at the Cook County Jail allegedly attacked Plaintiff, causing serious injury. (Defs.' Rule 56.1 Resp. ¶ 1; R. 27, Am. Compl. ¶ 31.)

## PROCEDURAL HISTORY

On June 28, 2013, Plaintiff filed his initial *pro se* complaint in this action. (R. 1, Compl.) Plaintiff alleges multiple violations of his constitutional rights under 42 U.S.C. § 1983, including failure to provide Plaintiff with necessary and appropriate security measures; failure to provide Plaintiff a new cellmate or move Plaintiff to a different cell; failure to respond to Plaintiff's request for protection; and failure to respond to Plaintiff's psychologist's request for Plaintiff's protection. (R. 27, Am. Compl. at 7-19.) This Court appointed counsel to represent Plaintiff on August 29, 2013, (R. 10, Order), and Plaintiff filed an amended complaint on March 10, 2014, (R. 27, Am. Compl.). Defendants filed a motion for summary judgment on February 18, 2014, (R. 22, Defs.' Mot.), and that fully-briefed motion is presently before the Court.

## LEGAL STANDARD

Summary judgment is appropriate when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists,

the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Id.* at 255; *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011). The Court does not evaluate the weight of the evidence, judge the credibility of the witnesses, or determine the ultimate truth of the matter; instead, the Court's role is simply to ascertain whether there exists a genuine issue of triable fact. *Anderson*, 477 U.S. at 249-50. The moving party bears the initial burden of demonstrating that it is entitled to judgment as a matter of law, and "it may discharge this responsibility by showing 'that there is an absence of evidence to support the non-moving party's case.'" *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the moving party has met this burden, "the non-moving party must come forward with specific facts demonstrating that there is a genuine issue for trial." *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

## ANALYSIS

There are no disputed material facts in this case. Defendants' motion for summary judgment addresses neither the substance nor the merits of Plaintiff's complaint, but hinges entirely on the interpretation of the Agreements. (*See* R. 24, Defs.' Mem. at 3-6.) Defendants contend that they are entitled to summary judgment because Plaintiff released all claims against Cook County and the Cook County Sheriff's Office related to his incarceration at the Cook County Jail up to the time when he signed the Agreements on December 27, 2012. (*Id.* at 4.) Defendants argue that Plaintiff's current claim, which relates to an incident that occurred on May 29, 2012, is included in the general release of the settlement agreements and Plaintiff is thus precluded from bringing the instant action. (*Id.*)

4

Plaintiff and Defendants agree that the Agreements are contracts governed by Illinois law. (*Id.* at 3; R. 29, Pl.'s Resp. at 5.) The parties dispute, however, the meaning of the release found in Paragraph Six of the Agreements. Defendants contend that the plain language of the release indicates Plaintiff's intent to release all claims against them with regards to Plaintiff's incarceration at the Cook County Jail that arose prior to December 27, 2012, (R. 24, Defs.' Mem. at 4), and Plaintiff argues that the plain language of the release is limited to the claims that were the subject of the two settled cases, numbers 09 C 7825 and 09 C 1534, (R. 29, Pl.'s Resp. at 5-6).

"A release is a contract wherein a party relinquishes a claim to a person against whom the claim exists, and a release is subject to the rules governing the construction of contracts." *Carona v. Ill. Cent. Gulf R. Co.*, 561 N.E.2d 239, 242 (Ill. App. Ct. 5th Dist. 1990). Under Illinois law, the Court "must interpret the words of the contract with their common and generally accepted meanings" and must construe the words of the contract "within the context of the contract as a whole." *William Blair & Co. v. FI Liquidation Corp.*, 830 N.E.2d 760, 770 (Ill. App. Ct. 1st Dist. 2005) (internal citations omitted). To be enforceable, the terms of a contract "must be clear, certain and free from ambiguity and doubt." *Morey v. Hoffman*, 145 N.E.2d 644, 647 (Ill. 1957). Where the terms of a release are clear and explicit, the court must enforce them as written. *Rakowski v. Lucente*, 472 N.E.2d 791, 794 (1984). "However, if the language of the contract is susceptible to more than one meaning, it is ambiguous." *Thompson v. Gordon*, 948 N.E.2d 39, 47 (Ill. 2011). If a contract is ambiguous, its construction is a question of fact and is not appropriately determined on summary judgment. *See Farm Credit Bank of St. Louis v. Whitlock*, 581 N.E.2d 664, 667 (Ill. 1991).

Here, the parties dispute the meaning of Paragraph Six of the Agreements, in which Plaintiff agreed to release Cook County, Sheriff Dart, and other defendants of 09 C 7825, and their agents, from:

> any and all actions, suits, debts, sums of money, accounts and all claims and demands of whatever nature, in law or in equity that are the subject of [09 C 7825] and [09 C 1534], including but not limited to (i) any and all other claims stemming from Plaintiff's incarceration at the Cook County Jail, up until the date of the execution of this settlement agreement; (ii) any and all claims for Constitutional violations against Plaintiff, and/or any damaged or destroyed property which are the subject of [09 C 7825] and [09 C 1534] or during the timeframe of Plaintiff's incarceration at the Cook County Jail up until the date of the execution of this settlement agreement; (iii) any costs accrued arising out of Plaintiff's interaction with Defendants, and/or any other employees of the Cook County Department of Corrections which are the subject of [09 C 7825] and [09 C 1534], or during his stay at the Cook County Jail up until the date of the execution of this settlement agreement; and/or (iv) any claim or suit which he . . . may heretofore or hereafter have had by reason of said incidents which are the subject of [09 C 7825] and [09 C 1534] . . . or any other incident as a result of his incarceration at the Cook County Jail up until the date of the execution of this settlement agreement.

(R. 23-2, Ex. II, 09 C 7825 Agreement ¶ 6; R. 23-3, Ex. III, 09 C 1534 Agreement ¶ 6.) The Court finds that the release provisions outlined in Paragraph Six of the Agreements are facially clear, specific, and unambiguous. This language clearly releases Cook County, Sheriff Dart, and "their agents, employers and former employers" from any and all actions and claims "stemming from Plaintiff's incarceration at the Cook County Jail" up until December 27, 2012, when the Agreements were executed. Thus, the present claim, which relates to an incident that occurred on May 29, 2012, and stems from Plaintiff's incarceration at the Cook County Jail, is unequivocally precluded by the release.

Plaintiff does not contend that the language in Paragraph Six is ambiguous. Instead, Plaintiff argues that subsections (i) through (iv) of Paragraph Six of the Agreements operate as modifiers of the preceding phrase and are thus limited in scope. (R. 29, Pl.'s Resp. at 6.)

Plaintiff overlooks, however, that subparagraphs (i) through (iv) are preceded by the phrase "including but not limited to," which signals a broad release. *See People v. Perry*, 864 N.E.2d 196, 207 (Ill. 2007) (finding that the word "includes," "when followed by a listing of items, means that the preceding general term encompasses the listed items," and "the preceding general term is to be construed as a general description of the listed items"); *Paxson v. Bd. of Educ. of Sch. Dist. No. 87*, 658 N.E.2d 1309, 1314 (Ill. App. Ct. 1st Dist. 1995) (finding "the word 'including', in its most commonly understood meaning, to be a term of enlargement, not of limitation"); *Zebulon Enters., Inc. v. DuPage Cnty.*, 496 N.E.2d 1256, 1259 (Ill. App. Ct. 2nd Dist. 1986) (concluding that "the word 'including' was used merely to preface illustrative examples of the general classification, and not to limit its meaning"); *see also* Black's Law Dictionary 777 (8th ed. 2004) ("the participle *including* typically indicates a partial list"). Here, the phrase "including but not limited to," which is synonymous to the word "including,"[4] is intended to introduce examples of the general terms preceding it. Subsections (i) through (iv) of Paragraph Six do not limit the scope of the general release to the specific incidents on which the aforementioned individual claims arose and are provided simply as "illustrative examples." *See Zebulon Enters.*, 496 N.E.2d at 1259.

Plaintiff additionally argues that Defendants' proposed broad interpretation of the release is in conflict with Paragraph Four of the Agreements. (R. 29, Pl.'s Resp. at 6.) Paragraph Four of the Agreements states:

> In exchange for the payment referenced in paragraph 2, Plaintiff agrees to dismiss any and all claims against Defendants arising out of [09 C 7825] and [09 C 1534]. Plaintiff's dismissal is voluntary and the dismissal is in consideration

---

[4] Black's Law Dictionary defines "include" as "[t]o contain as a part of something" and states that "some drafters use phrases such as *including without limitation* and *including but not limited to* — which mean the same thing." Black's Law Dictionary 777-78 (8th ed. 2004).

7

> for the settlement amount of Fifteen Thousand Dollars ($15,000.00) paid on behalf of the Defendants in this case.

(R. 23-2, Ex. II, 09 C 7825 Agreement ¶ 4; R. 23-3, Ex. III, 09 C 1534 Agreement ¶ 4.) Plaintiff argues that the language in Paragraph Four clearly indicates that Plaintiff only released the claims arising out of those two suits and did not intend to release any other claim. (R. 29, Pl.'s Resp. at 6.). The Court must "construe the words of a contract within the context of the contract as a whole." *William Blair & Co.*, 830 N.E.2d at 770. The Court does "not view portions, terms, clauses, or language in the contract in isolation," but rather views each provision in light of its context within the entire document. *St. Paul Mercury Ins. v. Aargus Sec. Sys., Inc.*, 2 N.E.3d 458, 478 (Ill. App. Ct. 1st Dist. 2013). Here, Plaintiff attempts to limit the entire scope of the Agreements to the language in a consideration clause. He ignores the expansive language used in the remaining clauses within the Agreements, including the general release provision outlined in Paragraph Six. In interpreting the agreements, however, the Court "must give effect to each and every section of the Agreement[s], and must read the different sections harmoniously, and accord each section its proper weight, and not read the sections out of context to achieve a desired result as the plaintiff[ ] request[s]." *Air Line Stewards & Stewardesses Assoc., Local 550 v. Trans World Airlines, Inc.*, 713 F.2d 319, 322 (7th Cir. 1983) (applying Illinois law). The Court declines to read the consideration provision in Paragraph Four as limiting the scope of the Agreements as a whole, especially in light of the broad language in Paragraph Six, in order to achieve Plaintiff's desired result.

Relying on *Carona v. Illinois Central Gulf Railroad Co.*, 561 N.E.2d 239 (Ill. App. Ct. 5th Dist. 1990), Plaintiff next argues that where a release contains a general release in addition to the release of specific claims, the contract should be interpreted as releasing only those specific claims. (R. 29, Pl.'s Resp. at 7.) In *Carona*, the plaintiff brought suit against his employer for

injuries sustained in a work-related accident on February 22, 1986. 561 N.E.2d at 240. The plaintiff had signed a settlement agreement on August 14, 1986, releasing all claims against his employer for injuries he sustained in a July 1983 work-related accident. *Id.* at 240-41. The release agreement stated, in relevant part, that the plaintiff agreed to release the defendant from:

> any and all lines or companies owned, operated or controlled by or allied with it, their respective successors and assigns, *and all others covered* from any and all claims, demands, suits, actions, causes of action, and damages whatsoever, which [the plaintiff] now [has] or may in the future have against [the defendant] in consequence, directly or indirectly, of any matter or thing done or suffered to be done by [the defendant] prior to and including the date hereof, and more particularly on account of *[a]n injury/accident/incident that occurred while in the employ of the Illinois Central Gulf Railroad* at or near *New Orleans, La.* on or about the *29th* day of *July* 19*83*.

*Id.* at 241-42 (emphasis in original to indicate handwritten portions). Thus, the release "contained words of general release" but also "specifically referred to the incident of July 19, 1983." *Id.* at 242. The appellate court reversed the grant of summary judgment in the defendant's favor, holding, *inter alia*, that the release pertained only to the July 1983 injury. *Id.*

Although the release provision in *Carona* includes some language that is similar to Plaintiff's agreement, the Court finds greater significance in the unique phrase in the *Carona* agreement: ". . . and more particularly on account of *[a]n injury/accident/incident that occurred while in the employ of the Illinois Central Gulf Railroad* at or near *New Orleans, La.* on or about the *29th* day of *July* 19*83*." *Id.* at 241-242. This handwritten section specifically referred to the incident out of which the claim arose and, rather than providing an illustrative example, used the word "particularly" to narrow the scope of the release. Paragraph Six of the instant Agreements, on the other hand, does not contain language indicating that it is limited to those particular incidents and in fact uses expansive language to reiterate that the release provision is broad. Instead, the agreements mention two of the claims at issue as inclusive rather than exclusive

9

means of preclusion. (R. 23-2, Ex. II, 09 C 7825 Agreement ¶ 6; R. 23-3, Ex. III, 09 C 1534 Agreement ¶ 6.) It is clear to this Court and any objective reader of the settlement Agreements that the defendants intended to bar Plaintiff from litigating any other lawsuit generally involving his incarceration at the Cook County Jail up to the time of the execution of the Agreements.

Even if the release language at issue here was identical to the language in *Carona*, however, Plaintiff's reliance is misplaced. Although Illinois courts sometimes restrict general releases to the specific claims contained in release agreements when the releasing party is unaware of other claims, "where both parties were aware of an additional claim at the time of signing the release, courts have given effect to the general release language of the agreement to release that claim as well." *Whitlock*, 581 N.E.2d at 667 (collecting cases). Here, there is no doubt that the releasing party was aware of the instant claim when he executed the Agreements, as Plaintiff had already been assaulted and had filed a claim for this assault at the time of the execution. Finally, Plaintiff argues that it would be against public policy to enforce the release to preclude him from "bringing suit for other unrelated claims." (R. 29, Pl.'s Resp. at 8) (quoting *Carona*, 561 N.E.2d at 242). The court in *Carona* noted that "the plaintiff was not represented by counsel at the time of the signing of the release," and it thus considered his perception "[a]s a layman." *Carona*, 561 N.E.2d at 242. Plaintiff, on the other hand was well-represented by counsel to help him understand the broad scope of the release provisions. *See Gavery v. McMahon & Elliott*, 670 N.E.2d 822, 825-26 (Ill. App. Ct. 1st Dist. 1996) (considering the plaintiff's representation by independent counsel regarding the release when determining that the release barred the plaintiff's instant claim, even though it was not listed following the phrase "including but without limitation" in the release agreement). Accordingly, any public policy considerations govern in favor of enforcing the Agreements as executed under Illinois law. *See*

*Rakowski*, 472 N.E.2d at 795 ("As a matter of public policy the settlement of claims should be encouraged. If we were now to add limitations not expressed in the general language of the settlement instrument . . . we would make those who desire to end litigation wary and uncertain of what they would accomplish by settlement."). Plaintiff has thus failed to provide the Court with any reason that it should not enforce the clear and unambiguous language of the release provision in Paragraph Six of the Agreements as written. *See Rakowski*, 472 N.E.2d at 794.

There is no dispute as to any material fact, and the only issue before the Court is whether the releases Plaintiff signed bar the claims underlying the instant suit. Finding that they do, the Court concludes that Defendants are entitled to a judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Upon granting a defendant's motion for summary judgment, the Court "may sua sponte enter summary judgment in favor of nonmoving additional defendants 'if the motion raised by the first defendant is equally effective in barring the claim against the other defendants, and the plaintiff had an adequate opportunity to argue in opposition to the motion.'" *Kennedy v. Children's Serv. Soc. of Wisc.*, 17 F.3d 980, 983 n.1 (7th Cir. 1994) (quoting *Colan v. Cutler-Hammer, Inc.*, 812 F.2d 357, 360 n.2 (7th Cir. 1987)). Here, the reason underlying the Court's grant of summary judgment—that Plaintiff executed a settlement agreement barring him from bringing this suit—is not specific to the claims brought against the moving Defendants. Instead, it applies equally to all named defendants, who are the "defendants" against whom Plaintiff released all actions in Paragraph Six of the Agreements or the agents of those defendants. (*See* R. 23-2, 09 C 7825 Agreement ¶ 6; R. 23-3, 09 C 1534 Agreement ¶ 6) (". . . releases, acquits and discharge[s] defendants, and their agents . . ."). In responding to Defendants' motion for summary judgment, Plaintiff had an adequate opportunity to argue in opposition and to present

any evidence that would support continuing this suit. Accordingly, the Court enters summary judgment in favor of all named defendants.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion for summary judgment (R. 22). The Clerk of the Court is directed to enter judgment against Plaintiff and in favor of all named defendants.

ENTERED: _____
Chief Judge Rubén Castillo
United States District Court

**Dated: September 5, 2014**