UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EBRAHIMI DARVOSH, | ) |
| Plaintiff, | ) |
| v. | ) No. 13 C 04727 |
| SERGEANT LEWIS, et al., | ) Chief Judge Rubén Castillo |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ebrahimi Darvosh, an inmate at the Cook County Jail, brought this action under 42 U.S.C. § 1983 against certain officers of the Cook County Sheriff's Office, alleging that they violated his constitutional rights during his incarceration. (R. 27, Am. Compl. at 2-3.) Plaintiff named the following defendants: Sergeant Lewis, Officer Gallancher, Lieutenant John Doe, Officer Farris, Officer Moore, Officer Johnson, Officer John Doe, Officer Star #8324, Sheriff Thomas Dart, the Sheriff's Office of Cook County, and Cook County, Illinois. (*Id.* at 2.) On September 5, 2014, the Court granted summary judgment to all Defendants, concluding that Plaintiff executed a settlement agreement barring him from bringing this suit. (R. 44, Mem. Op. & Order at 11.) Plaintiff now requests that the Court reconsider its ruling. (R. 56, Mot. to Alter or Amend J.) For the reasons stated below, Plaintiff's motion to reconsider is denied.

## BACKGROUND

Prior to filing this suit, Plaintiff filed multiple prior lawsuits against the Cook County Department of Corrections and various of its employees.[1] (R. 44, Mem. Op. & Order at 1.)

---

[1] This Court set forth the facts and history of this case in its previous order. (R. 44, Mem. Op. & Order.) The Court assumes familiarity with these facts.

*Ebrahime v. Cook Cnty. Dep't of Corr., et al.*, No. 09 C 1534 (N.D. Ill. filed Mar. 18, 2009) ("09 C 1534"), and *Ebrahimi v. Cook Cnty. Dep't of Corr., et al.*, No. 09 C 7825 (N.D. Ill. filed Dec. 21, 2009) ("09 C 7825"), two such cases, were the subjects of settlement agreements between Plaintiff and the Cook County State's Attorney's Office (the "Agreements").[2] (*Id.* at 2.) Plaintiff was appointed separate counsel in each of those suits. (*Id.*) Plaintiff signed the Agreements on December 27, 2012. (*Id.*)

Two provisions of the Agreements are at issue in this case: Paragraph Four and Paragraph Six. Paragraph Four of the Agreements states:

> In exchange for the payment referenced in paragraph 2, Plaintiff agrees to dismiss any and all claims against Defendants arising out of [09 C 7825] and [09 C 1534]. Plaintiff's dismissal is voluntary and the dismissal is in consideration for the settlement amount of Fifteen Thousand Dollars . . . paid on behalf of the Defendants in this case.

(R. 29-1, 09 C 1534 Agreement ¶ 4; R. 29-2, 09 C 7825 Agreement ¶ 4.) Paragraph Six of the Agreements states:

> Plaintiff . . . fully and forever releases, acquits, and discharge[s] defendants, and their agents, employers, and former employers, either in their official or individual capacities, from any and all actions, suits, debts, sums of money, accounts and all claims and demands of whatever nature, in law or in equity that are the subject of [09 C 7825] and [09 C 1534], including but not limited to (i) any and all other claims from Plaintiff's incarceration at the Cook County Jail, up until the date of the execution of this settlement agreement; (ii) any and all claims for Constitutional violations against Plaintiff, and/or any damaged or destroyed property which are the subject of [09 C 7825] and [09 C 1534] or during the timeframe of Plaintiff's incarceration at the Cook County Jail up until the date of the execution of this settlement agreement; (iii) any costs accrued out of Plaintiff's interaction with Defendants and/or any other employees of the Cook County Department of Corrections which are the subject of [09 C 7825] and [09 C 1534] or during his stay at the Cook County Jail up until the date of the execution of this settlement agreement; and/or (iv) any claim or suit which he . . . may

---

[2] The settlement agreements are materially identical, and the Court will treat them as one for the purposes of this opinion. (R. 29-1, 09 C 1534 Agreement ¶ 4; R. 29-2, 09 C 7825 Agreement ¶ 4.)

2

heretofore or hereafter have had by reason of said incidents which are the subject of [09 C 7925] and [09 C 1534] . . . or any other incident as a result of his incarceration at the Cook County Jail up until the date of the execution of this settlement agreement.

(R. 29-1, 09 C 1534 Agreement ¶ 6; R. 29-2, 09 C 7825 Agreement ¶ 6.)

On June 18, 2012, prior to signing the Agreements and while 09 C 7825 and 09 C 1534 were still pending, Plaintiff filed another lawsuit alleging constitutional violations stemming from an incident that occurred on May 29, 2012. *Darvosh v. Dart, et al.*, No. 12 C 5257 (N.D. Ill. filed July 2, 2012) ("12 C 5257"). On August 15, 2012, this Court dismissed the claim without prejudice for failure to exhaust administrative remedies. *Darvosh v. Dart*, No. 12 C 5257 (N.D. Ill. Aug. 15, 2012).

On June 28, 2013, Plaintiff filed the present complaint, alleging the same conduct and constitutional violations as in 12 C 5257, after he allegedly exhausted administrative remedies. (R. 44, Mem. Op. & Order at 3; R. 31, Pl.'s Rule 56.1 Resp. ¶¶ 1-3.) This Court granted summary judgment to Defendants on the ground that the Agreements unambiguously released all claims against Defendants that arose prior to the Agreements' execution. (R. 44, Mem. Op. & Order.) As the incident at issue in this lawsuit occurred on May 29, 2012, prior to the date Plaintiff signed the Agreements, the claim was deemed waived. (*Id.* at 11-12.)

On October 3, 2015, Plaintiff filed a motion to reconsider the Court's opinion under Federal Rule of Civil Procedure 59(e).[3] (R. 56, Mot. to Alter or Amend J.) In his motion, Plaintiff renews his arguments raised at summary judgment that the Agreements are ambiguous concerning their application to claims that were not included in 09 C 7825 and 09 C 1534 but that arose prior to Plaintiff signing the Agreements on December 27, 2012. (*Id.*) Plaintiff also

---

[3] Although Plaintiff was represented by counsel at previous stages, his counsel withdrew after summary judgment was granted and Plaintiff now proceeds pro se. (R. 47, Mot. to Withdraw; R. 50, Order.)

3

argues, for the first time, that as a non-English speaker who was "heavily medicated" on numerous medications, he "did not make or have a competent understanding of the release agreement." (*Id.* at 3.)

## LEGAL STANDARD

A motion that seeks to challenge the merits of a ruling by a district court will automatically be considered as having been filed under Rule 59(e) or Rule 60(b) of the Federal Rules of Civil Procedure. *Mares v. Busby*, 34 F.3d 533, 535 (7th Cir. 1994) ("Though the plaintiffs did not file their motion to reconsider pursuant to any one of the Federal Rules of Civil Procedure, 'the fact that it challenges the merits of the district court's decision means that it must fall under Rule 59(e) or Rule 60(b).'" (citation omitted)). A motion to alter or amend a judgment under Rule 59(e) "must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). If timely filed, a motion styled as a motion for reconsideration should be considered under Rule 59(e). *Kiswani v. Phx. Sec. Agency, Inc.*, 584 F.3d 741, 742 (7th Cir. 2009). Because Plaintiff's motion was timely filed,[4] it is properly considered under Rule 59(e).

Motions under Rule 59(e) are granted only in "extraordinary cases." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 521 (7th Cir. 2015). "A Rule 59(e) motion will be successful only where the movant clearly establishes: '(1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment.'" *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013) (citation

---

[4] A Rule 59(e) motion typically must be filed within 28 days of the entry of judgment. Fed. R. Civ. Proc. 59(e). However, when the plaintiff is a *pro se* prisoner, the "mailbox rule" treats the date of delivery to prison authorities for forwarding to the court as the effective filing date. *Houston v. Lack*, 487 U.S. 266, 276 (1988). Although Plaintiff's motion was received by the Court on October 8, 2014, which is 29 days after this Court issued its order, he attests in his notice of filing that he delivered it to prison authorities on October 3, 2014, only 24 days after the judgment. (R. 57, Notice of Filing.) His filing is thus timely under Rule 59(e).

4

omitted). A manifest error of law means the "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (citation omitted). It is improper to use a Rule 59(e) motion "to advance arguments or theories that could and should have been made before the district court rendered a judgment." *Sigsworth v. City of Aurora, Ill.*, 487 F.3d 506, 512 (7th Cir. 2007) (citation omitted). Nor is it appropriate for the movant to "'rehash' previously rejected arguments." *Vesely v. Armslist L.L.C.*, 762 F.3d 661, 666 (7th Cir. 2014) (citation omitted). Additionally, "[a] party may not use a motion for reconsideration to introduce new evidence that could have been presented earlier." *Cincinnati*, 722 F.3d at 956 (quoting *Oto*, 224 F.3d at 606). "Once judgment has been entered, there is a presumption that the case is finished, and the burden is on the party who wants to upset that judgment to show the court that there is good reason to set it aside." *Hecker v. Deere & Co.*, 556 F.3d 575, 591 (7th Cir. 2009). Whether to grant a motion to reconsider is a matter squarely within the Court's discretion. *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996) (citation omitted).

## ANALYSIS

Plaintiff asks that the Court reconsider its prior opinion on two distinct grounds. Plaintiff principally contends that this Court erred in ruling that the Agreements unambiguously released all of his claims arising against Defendants prior to December 27, 2012. (R. 56, Mot. to Alter or Amend J. at 1-3.) He argues that the Court interpreted Paragraph Six of the Agreements too broadly as a general release instead of as a specific release of only those claims directly at issue in 09 C 7825 and 09 C 1534. (*Id.* at 2). Even if Paragraph Six is properly interpreted this broadly on its face, he argues that it should be read in the context of the rest of the Agreements. (*Id.*) In particular, he believes that Paragraph Four establishes that "Plaintiff only released the

claims arising out of [09 C 7825 and 09 C 1534] and did not intend to release any other claim."
(*Id.*)

The Court's order granting summary judgment explicitly rejected these arguments, which were raised in Plaintiff's response to the motion for summary judgment. (R. 44, Mem. Op. & Order at 6-11.) Plaintiff has not demonstrated that there was a disregard, misapplication, or failure to recognize controlling precedent, nor has he disputed the Court's decision except to state his disagreement with its conclusions. *See Oto*, 224 F.3d at 606 ("A 'manifest error' is not demonstrated by the disappointment of the losing party"). Therefore, these arguments do not provide a proper basis upon which the Court may alter its decision.

Nevertheless, in order to clarify the Court's previous finding that the Agreements unambiguously waive all claims against Defendants prior to their adoption, some further explanation may be helpful.[5] Insofar as Plaintiff argues that Paragraph Six is itself ambiguous, he must appeal to its first clause, which states:

> Plaintiff . . . fully and forever releases, acquits and discharge[s] defendants, and their agents, employers and former employers, either in their official or individual capacities, from any and all actions, suits, debts, sums of money, accounts and all claims and demands of whatever nature, in law or in equity that are the subject of [09 C 7825] and [09 C 1534] . . . .

(R. 29-1, 09 C 1534 Agreement ¶ 6; R. 29-2, 09 C 7825 Agreement ¶ 6.) Taken on its own, this language could be read as ambiguous concerning the scope of its release. The modifier "that are the subject of [09 C 7825] and [09 C 1534]" could apply to the entire series (that is, to "any and all actions, suits, debts, sums of money, accounts and all claims and demands of whatever nature") or only to the last item in the series (that is, to "all claims and demands of whatever nature," leaving "any and all actions, suits, debts, sums of money, [and] accounts" unrestricted

---

[5] As noted in the Court's order granting summary judgment, Plaintiff and Defendants agreed that the Agreements are governed by Illinois law. (R. 44, Mem. Op. & Order at 5.)

6

by the issues in the previous cases). If read as applying to the entire series, then the release is limited only to issues raised in the settled cases. If read as applying only to the final term, then the release is general and encompasses any actions arising before the execution of the Agreements. Standing alone, this clause of Paragraph Six is indeed ambiguous.

This clause of Paragraph Six does not stand alone, however. Under Illinois law, the Court must construe the words of the contract "within the context of the contract as a whole." *William Blair & Co. v. FI Liquidation Corp.*, 830 N.E.2d 760, 770 (Ill. App. Ct. 1st Dist. 2005) (citation omitted). Paragraph Six continues by establishing that the claims released by its first clause "includ[e] but [are] not limited to" subparagraphs (i) through (iv). (R. 29-1, 09 C 1534 Agreement ¶ 6; R. 29-2, 09 C 7825 Agreement ¶ 6.) The scope of the first clause cannot be narrower than the items that it includes. *See People v. Perry*, 864 N.E.2d 196, 207 (Ill. 2007) (finding that the word "includes," "when followed by a listing of items, means that the preceding general term encompasses the listed items"). Subparagraph (i), in particular, provides that the release extends to "any and all *other* claims from Plaintiff's incarceration at the Cook County Jail, up until the date of the execution of this settlement agreement." (R. 29-1, 09 C 1534 Agreement ¶ 6; R. 29-2, 09 C 7825 Agreement ¶ 6 (emphasis added).) If the release were limited to the claims in 09 C 7825 and 09 C 1534, as Plaintiff contends, then by definition it would not include any other claims. Reading the release clause narrowly is foreclosed by the clear indication that it encompasses other potential claims, whatever they may be. Thus, Paragraph Six is unambiguously a general release of "any and all claims."

Despite Plaintiff's argument to the contrary, this broad interpretation of Paragraph Six is not inconsistent with Paragraph Four. In short, Paragraph Four is an agreement by Plaintiff to "dismiss" any claims against Defendants arising from 09 C 7825 and 09 C 1534, (R. 29-1, 09 C

7

1534 Agreement ¶ 4; R. 29-2, 09 C 7825 Agreement ¶ 4), while Paragraph Six is an agreement by Plaintiff and his heirs to "releas[e], acqui[t], and discharge" Defendants and various other parties from any claims arising prior to execution of the Agreements, (R. 29-1, 09 C 1534 Agreement ¶ 6; R. 29-2, 09 C 7825 Agreement ¶ 6). The main distinction between "dismissing" and "releasing" is that dismissal implies that the issue has already been joined, while release implies that the issue could potentially have been joined. *Compare* Black's Law Dictionary 502 (8th ed. 2004) ("**dismiss,** *vb.* **1.** To send (something) away; specif., to terminate (an action or claim) without further hearing, esp. before the trial of the issues involved.") *with id.* at 1315 ("**release,** *n.* **1.** Liberation from an obligation, duty, or demand; the act of giving up a right or claim to the person against whom it could have been enforced."); *see also Motorola Solutions, Inc. v. Zurich Ins. Co.*, 33 N.E.3d 917, 941 (Ill. App. Ct. 2015) ("A release is the abandonment of a claim to the person against whom the claim exists." (citations and internal quotation marks omitted)). Thus, Paragraph Four and Paragraph Six are not inconsistent releases of differing scope; Paragraph Four is an agreement to abandon Plaintiff's then-pending suits in 09 C 7825 and 09 C 1534, while Paragraph Six is an agreement to waive any claims that had already arisen, whether or not they were included in 09 C 7825 and 09 C 1534.

Therefore, because Paragraph Six of the Agreements cannot plausibly be read as being limited only to those claims included in 09 C 7825 and 09 C 1534, and because Paragraphs Four and Six can be read consistently with one another, the Agreements when read as a whole do not give rise to any ambiguity. The Court thus declines to alter its previous holding.

Plaintiff further argues that, because in his view the Agreements are ambiguous, parol evidence should be admissible to demonstrate the intent of the parties. (R. 56, Mot. to Alter or Amend J. at 3.) If so, he argues, then interpretation of the Agreements becomes a question of

fact and thus it was inappropriate to decide its meaning on a motion for summary judgment. (*Id.*) This argument is unavailing under Illinois contract law. The Illinois Supreme Court has held that the "four corners" rule of contract interpretation generally governs contract interpretation. *See Air Safety, Inc. v. Teachers Realty Corp.*, 706 N.E.2d 882, 884 (Ill. 1999); *see also In re Duckworth*, 776 F.3d 453, 456 (7th Cir. 2014) ("Illinois adopts the familiar principle that an unambiguous contract is interpreted by the court as a matter of law without use of parol evidence."). Under this rule, "[i]f the language of the contract is facially unambiguous, then the contract is interpreted by the trial court as a matter of law without the use of parol evidence." *Air Safety*, 706 N.E.2d at 884. Because this Court has found that the Agreements are facially unambiguous as a matter of law, the four corners rule applies and parol evidence may not be introduced to create ambiguity.

Plaintiff also argues that he did not "make or have a competent understanding of the release agreement" when it was signed because he does not speak English and was heavily medicated. (R. 56, Mot. to Alter or Amend J. at 3.) Plaintiff seems to be raising two separate arguments, although he does not clearly distinguish them. First, he challenges the Court's conclusion "that the Settlement Agreement signed by a no english speaking Plaintiff" was unambiguous. (*Id.* at 1.) Second, he suggests that his language difficulties and medications prevented him from understanding and thus consenting to the Agreements. (*Id.* at 3)

This first argument does not succeed because the subjective mental state of a party to a contract does not determine its ambiguity. As explained above, Illinois applies the four corners rule to contracts like the Agreements. *Air Safety*, 706 N.E.2d at 885; *In re Duckworth*, 776 F.3d at 456. Because the Agreements' language, considered alone, unambiguously waives all claims accrued before the Agreements' execution, the Court cannot inquire further.

9

Plaintiff's second argument that a language barrier and medication prevented him from understanding and consenting to the Agreements also does not warrant reopening the Court's decision. Plaintiff raises these issues for the first time in his Rule 59(e) motion. Even if these arguments would affect the disposition of his claim, Rule 59(e) motions may not be used "to advance arguments or theories that could and should have been made before the district court rendered a judgment." *Sigsworth,* 487 F.3d at 512 (citation omitted). Because these arguments were not raised before the Court issued its order and are not based on newly discovered evidence,[6] they are not properly raised under Rule 59(e).

Even if Plaintiff could present these arguments at this stage, they would not change the outcome of his suit. At most, Plaintiff claims a unilateral mistake as to the scope of the release and this is not enough to avoid the Agreements. In Illinois, "the general rule is that a unilateral mistake is insufficient to invalidate an agreement compromising and settling a disputed claim." *Barth v. Reagan,* 497 N.E.2d 519, 526 (Ill. App. Ct. 1986); *see also In re Marriage of Lorton,* 561 N.E.2d 156, 158 (Ill. App. Ct. 1990) ("Any mistake as to the terms was unilateral on Leon's part and as such has no effect on the validity of the agreement itself."). Generally, "a party who agrees to terms in writing without understanding or investigating those terms does so at his own peril." *Paper Exp., Ltd. v. Pfankuch Maschinen GmbH,* 972 F.2d 753, 757 (7th Cir. 1992) (applying Illinois law); *see also id.* (holding that even "a blind or illiterate party (or simply one

---

[6] Plaintiff did attach several pages of medical records to his Rule 59(e) motion that show medications he may have been prescribed at the time the Agreements were executed. (R. 56, Mot. to Alter or Amend J. at 5-9.) However, this evidence was not "newly discovered" for the purposes of 59(e) as it could have been obtained and presented prior to judgment. Further, these records date from October 2012 and November 2012, prior to the settlement of his cases. (*Id.*) The only evidence that Plaintiff was taking medication when signing the Agreements is a list in his motion for reconsideration of six medications he claims to have taken, not all of which are reflected in the records he submitted. (*Id.* at 3, 5-9.) Finally, Plaintiff does not allege any particular side effects, stating only that he was "heavily medicated" without elaboration. (*Id.* at 3.)

unfamiliar with the contract language) who signs the contract without learning of its contents would be bound"). This principle holds true even when the terms of a contract are not in a party's native language. *Id.* ("[T]he fact that the rules were in German [does] not preclude enforcement of the contract.").

Further, because Plaintiff was represented by counsel when he signed both Agreements, his lack of understanding does not invalidate the settlement. When a party is represented by counsel, it is counsel's responsibility to represent the party's interest. "[I]f an attorney's conduct falls substantially below what is reasonable under the circumstances, the client's remedy is against the attorney in a suit for malpractice," not to invalidate the agreement. *Baptist v. City of Kankakee*, 481 F.3d 485, 490 (7th Cir. 2007) (quoting *Link v. Wabash R.R. Co.*, 3709 U.S. 626, 634 n.10 (1962)) (internal quotation mark omitted).

In sum, Plaintiff has failed to meet his burden of establishing that the Court committed a manifest error of law or fact in its previous opinion. *See Hecker*, 556 F.3d at 591. Plaintiff's motion only raises arguments that were made to and rejected by this Court previously or that could have been brought at the summary judgment stage. He has provided no grounds upon which the Court could alter the prior judgment, and accordingly, the Court must deny Plaintiff's motion to reconsider.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to reconsider (R. 56) is DENIED.

ENTERED: _____
Chief Judge Rubén Castillo
United States District Court

**Dated: September 11, 2015**